IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LAWRENCE L. ORTIZ,

    Plaintiff,

vs.   Civ. No. 05-392 RHS

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.

## MEMORANDUM OPINION AND ORDER

1. This matter comes before the Court upon Plaintiff's Motion to Reverse or Remand Administrative Agency Decision ("Motion"), filed October 17, 2005 **[Doc. 10]**. Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security denying the Plaintiff's claim for a period of disability and for disability insurance benefits ("DIB") under Title II of the Social Security Act. Plaintiff is apparently receiving supplemental security income ("SSI") benefits under Title XVI.[1]

2. Plaintiff applied for DIB on June 3, 2002,[2] alleging a disability that commenced on March 1, 1997 due to problems with, *inter alia*, his "head[,] neck[,] back[,] hips[,] legs [and] feet." (Tr. at 68.) Plaintiff claims that balance problems, hearing problems, neck problems, migraine headaches, back problems and leg and foot pain limit his ability to work. (Tr. at 68.)

---

[1] The DDS [Disability Determination Services] determined that Plaintiff was disabled as of June 1, 2002, pursuant to Plaintiff's claim for benefits under Title XVI. (Tr. at 436, 442, 549.)

[2] The first page of Plaintiff's Application for Disability Insurance Benefits is dated May 14, 2002 (typewritten) and 6/3/02 (handwritten). (Administrative Transcript ("Tr.") at 57.) The signature page of Plaintiff's application is dated 5-17-02 (handwritten). (Tr. at 59.) The ALJ stated that Plaintiff filed his application on June 3, 2002. (Tr. at 18.)

Plaintiff was born on November 30, 1956, has an eleventh grade education, and completed a truck driving course at TVI. (Tr. at 57, 74.) He has worked as a salesman, mechanic, cable television lineman and driver. (Tr. at 69.) His last job, held from April 1994 to March 1, 1997, was as a truck driver for a U.S. mail contractor. (Tr. at 69.)

3. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

4. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson, 987 F.2d at 1486 (citing 42 U.S.C. §423 (d)(1)(A)); see also § 1382c(a)(3)(A). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

5. At the first four levels of the evaluation, the claimant must show: (1) that he is not working; (2) that he has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he is unable to perform work done in the past. Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988). At the fifth step of the

evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity [RFC], age, education and prior work experience.  See 20 C.F.R. §§ 404.1520, 416.920.

      6.  In this case, the ALJ found that Plaintiff was not disabled at step five of the sequential analysis, concluding that he "he had the ability to make a satisfactory adjustment to jobs that exist in significant numbers in the national economy, considering his residual functional capacity, age, education, and work background."  (Tr. at 27.)  Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1)  the ALJ failed to properly consider the lay witness statement of Plaintiff's mother; (2) the ALJ failed to obtain the opinion of a medical advisor in order to determine the onset of Plaintiff's disability in accordance with Social Security Ruling ("SSR") 83-20; and (3) the ALJ erred in conclusively applying the Medical-Vocational Rules ("Grids") to find that Plaintiff could perform other work.  (See Plaintiff's Memorandum in Support of Motion ("Memo") at 1 **[Doc. 11]**.)

      7.  Plaintiff's "date last insured" for disability benefits under Title II was June 30, 1999.  (Tr. at 18, 64.)  Thus, in order to establish his eligibility for benefits under Title II, Plaintiff must show that he met the definition of disability on or before that date.  See Flint v. Sullivan, 951 F.2d 264, 267 (10th Cir. 1991) (cited in Reid v. Chater, 71 F.3d 372, 374-75 (10th Cir. 1995)).

    *Whether the ALJ erred in conclusively applying the Grids*

      8.  In determining Plaintiff's functional capacities, the ALJ found that "for some of the time after he stopped working in March 1997 through the date his insured status lapsed, at the

end of June 1999, Mr. Ortiz was unable to perform any work."[3]  (Tr. at 25.)  Otherwise, the ALJ concluded that Plaintiff "had the residual functional capacity for the full range of light work through most of the period in question."  (Tr. at 25.)  In light of this RFC, the ALJ found at step four that Plaintiff "would not have been able to perform any of his past jobs."  (Tr. at 25.)

    9.  At step five, the burden shifted to the Commissioner to show that Plaintiff could perform other work that exists in the national economy.  See, e.g., Williams v. Bowen, 844 F.2d 748, 751 (10th Cir.1988).  The ALJ relied on the Grids to meet that burden, finding that they "direct[ed] a determination that [Plaintiff] would be able to perform jobs that exist in significant numbers in the national economy."  (Tr. at 26.)  Plaintiff argues that the ALJ erred in conclusively relying on the Grids because Plaintiff suffered from significant nonexertional impairments.  (Plaintiff's Memo at 10.)

    10.  The ALJ may not apply the Grids "conclusively in a given case unless the claimant's characteristics precisely match the criteria of a particular rule."  Channel v. Heckler, 747 F.2d 577, 579 (10th Cir.1984).  In addition, the Grids may not be applied mechanically if a claimant's RFC is curtailed by nonexertional limitations, such as postural or sensory limitations.  See Huston v. Bowen, 838 F.2d 1125, 1131 (10th Cir.1988).[4]  "Moreover, resort to the grids is particularly inappropriate when evaluating nonexertional limitations such as pain and mental impairments."

---

[3]The ALJ concluded that "none of these periods of complete inability to . . . work lasted, nor were they expected to last, 12 continuous months."  (Tr. at 25.)  However, the ALJ neither indicated the number of these periods, nor specified the length of time that Plaintiff's inability to work lasted.

[4]Nonexertional limitations, such as pain, may also limit an individual's capacity to work, such that he may not be able to perform the full range of work available within an RFC category.  See Channel, 747 F.2d at 580.

Thompson, 987 F.2d at 1488 (quoting Hargis v. Sullivan, 945 F.2d 1482, 1490 (10th Cir. 1991).

"In summary, an ALJ may not rely conclusively on the grids unless he finds (1) that the claimant has no significant nonexertional impairment, (2) that the claimant can do the full range of work at some RFC level on a daily basis, and (3) that the claimant can perform most of the jobs in that RFC level. Each of these findings must be supported by substantial evidence." Thompson, 987 F.2d at 1488.

11. Here, the ALJ found that "except for [unspecified] periods of time less than 12 continuous months, Claimant had the [RFC] to perform the physical exertion requirements of light work[5]" from March 1997 through June 1999. (Tr. at 26 ¶6.) The ALJ also found that "[d]uring that period of time, Claimant had no significant nonexertional limitations." (Tr. at 26 ¶6.)

12. Plaintiff apparently contends that the ALJ erred because "substantial evidence supported the significance of the claimant's pain . . . ." (Plaintiff's Reply in Support of Motion **[Doc. 15]** at 2.) However, Plaintiff misapprehends the standard that the Court must apply in reviewing the ALJ's decision. The test is not whether substantial evidence supports Plaintiff's proposed finding that significant nonexertional impairments existed, but whether substantial evidence supports the ALJ's finding that no significant nonexertional limitations existed. See Thompson, 987 F.2d at 1487, 1488. Thus, the Court must determine whether substantial evidence supports the ALJ's finding that Plaintiff "had no significant nonexertional limitations." (Tr. at 26 ¶6.)

13. As Plaintiff notes, the record contains both medical and non-medical evidence that

---

[5]In the body of his decision, the ALJ stated that Plaintiff had the RFC "for the full range of light work." (Tr. at 25.)

point to the existence of significant nonexertional impairments, particularly pain, during the relevant time period. The ALJ found (and the medical evidence amply supports) that Plaintiff had "medically determinable impairments, including a fungal discitis, which resulted in degenerative disc disease in his lumbosacral spine and degenerative joint disease in his cervical spine." (Tr. at 26 ¶3.) Plaintiff underwent a L4-5 discectomy and biopsy in September 1997 (tr. at 398), followed by "a long course of intravenous medication" related to the diagnosis of fungal discitis (tr. at 20). On May 17, 1999, Claude D. Gelinas, M.D. opined that Plaintiff "is a fusion candidate because of his previous diskitis" and planned to "schedule him for surgery" following discography and a clearance from his cardiologist. (Tr. at 379.)[6] The medical records indicate that during the relevant time period, Plaintiff complained of, *inter alia*: "chronic incapacitating low back pain with intermittent right leg pain whenever he tries to do any significant activity" (tr. at 412), neck and/or cervical pain (tr. at 139, 143, 280, 387) and headaches (tr. at 139, 412).

14. However, while the ALJ explicitly found that Plaintiff "had no significant nonexertional limitations," he does not explain or clearly identify the evidence on which he based this finding. See, e.g., Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir.1996) (explaining that the ALJ's bare conclusion is not subject to meaningful review). Further, some of the ALJ's findings are inconsistent and/or confusing. For example, the ALJ found that Plaintiff "was unable to perform any work" for certain unspecified period(s) of time between March 1997 and June 1999.

---

[6] By August 26, 1999, Plaintiff "apparently got approval for his surgery" and Dr. Gelinas performed a L4-5 fusion. (Tr. at 346, 376.) Specifically, the operative report indicates that Dr. Gelinas performed a posterior lumbar interbody fusion L4-5 with Brannigan carbon fiber cages, posterior instrumented fusion using Isola titanium hardware L4-5, bilateral complete discectomy and decompression L4-5, and right iliac crest bone graft through a separate fascial incision. (Tr. at 162.)

(Tr. at 25.)  The ALJ does not explain how Plaintiff can have "no significant nonexertional limitations" during the same period(s) of time in which he is incapable of performing any work at all.  Further, while the ALJ relied, at least in part, on the report of the agency's non-examining physicians, he did not explain his apparent disagreement with their opinion that Plaintiff was limited to occasional stooping.[7]  (Tr. at 423.)  Most important, however, the ALJ failed to adequately address Plaintiff's testimony and allegations regarding his nonexertional impairments and limitations.

      15.  Plaintiff testified that during the time prior to his date last insured, he "was in pain constantly, . . . . could not sleep," and that his physical therapy sessions "would put me back in bed for two days afterwards."  (Tr. at 556, 557.)  Plaintiff testified that in March of 1997 he could sit for "maybe a half an hour," and walk "maybe a half of a city block" before stopping to sit or lie down.  (Tr. at 560.)  Plaintiff testified that during the same time frame he could not squat or kneel.  (Tr. at 561-62.)  Plaintiff testified that he "had migraine headaches so bad that . . . . [he] had to wear sunglasses even at night."  (Tr. at 563.)  If Plaintiff's testimony regarding his nonexertional impairments and limitations is credible, it would seem to constitute overwhelming evidence that pain significantly limited his ability to perform a full range of light work jobs on a sustained basis.

      16.  The ALJ must make an express credibility determination if he disbelieves a claimant's pain testimony.  Schroeter v. Sullivan, 977 F.2d 391, 394-95 (7th Cir. 1992); Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (noting that a credibility finding must be "closely and affirmatively

---

[7]The ALJ did not include this limitation in describing Plaintiff's residual functional capacities.

linked to substantial evidence and not just a conclusion in the guise of findings") (quoting <u>Huston v. Bowen</u>, 838 F.2d 1125, 1133 (10th Cir. 1988). Defendant contends that "the ALJ made a supported finding that Plaintiff's subjective complaints, including pain, were not credible (Tr. 23)." (Defendant's Brief in Support of the Commissioner's Decision **[Doc. 14]** at 9.) However, nowhere in his decision did the ALJ expressly find that Plaintiff's testimony was not credible. Indeed, the ALJ's only express finding regarding credibility was that Plaintiff's "statements of record concerning his ability to perform work related activities, made during the period in question, *are generally credible*." (Tr. at 26 ¶5 (emphasis added).)

17. To the extent that the ALJ's statements can be construed as a finding that Plaintiff's testimony is not credible, such a finding is conclusory and lacks the requisite close and affirmative link to substantial evidence. For example, although the ALJ stated that "many inconsistencies" exist among Plaintiff's statements, he identified only one such statement.[8] (Tr. at 23.) The ALJ also found it significant that Plaintiff "misrepresented facts in his testimony," noted that "a number of discrepancies [exist] between Mr. Oritz' testimony and his treatment record," and stated that he did not find "any reference to the severe limitations Mr. Ortiz described in his testimony in the descriptions he gave to his health care providers in March 1997 or at any time through June 30, 1999." (Tr. at 23.) However, with the exception of the one "inconsistent" statement noted above, the ALJ did not point to any examples of Plaintiff's "misrepresentations" and "discrepancies." Nor did the ALJ identify any one of the "severe limitations" that Plaintiff purportedly described only in his testimony.

---

[8]The ALJ noted that while Plaintiff testified at the hearing "that he has been unable to go fishing since he injured his back in October 1996 . . . . the medical record . . . reveals that Mr. Ortiz has been fishing on more than one occasion . . . at least twice in 2000." (Tr. at 23.)

18. The ALJ's failure to expressly find that Plaintiff's critical testimony was not credible fatally undermines the argument that substantial evidence supports a finding that Plaintiff had no significant nonexertional limitations.[9]  Because the ALJ's finding that Plaintiff had no significant nonexertional limitations is not based on substantial evidence, the ALJ erred in conclusively applying the Grids at step five.  Accordingly, this action should be remanded for a re-hearing, to include a re-consideration of Plaintiff's credibility regarding his allegations of nonexertional impairments.

19. Because this matter is being remanded for further proceedings concerning the credibility analysis, the Court need not address Plaintiff's allegation that the ALJ erred in failing to obtain a medical advisor to determine the onset of disability.  However, the Court will briefly address Plaintiff's allegation that the ALJ erred in failing to consider the lay witness statement of Plaintiff's mother.  A review of the record indicates that Plaintiff intended to submit additional evidence to the ALJ, including an affidavit by Ms. Monica Ortiz.  (Tr. at 542.)  However, nothing indicates that the ALJ or the Commissioner ever received a copy Ms. Ortiz' affidavit.  On remand, Plaintiff may provide the affidavit of Ms. Monica Ortiz to the Commissioner for consideration as additional evidence.

20. Finally, in remanding this case, the Court does not intend to direct any particular result with respect to the Commissioner's ultimate determination on the issue of whether Plaintiff was disabled during the time period at issue.  On remand, the Commissioner should conduct further

---

[9]The ALJ's finding that Plaintiff's statements "are generally credible," imply that Plaintiff's statements also lack credibility to some extent.  However, such a finding of "implied noncredibility" lacks clarity, specificity and the necessary affirmative link between substantial evidence and the credibility determination.

proceedings as needed, following the re-consideration of Plaintiff's credibility and the submission of any additional evidence.

**WHEREFORE,**

**IT IS ORDERED** that Plaintiff's Motion to Reverse or Remand Administrative Agency Decision **[Doc. 10]** is **granted** and this cause is remanded for further proceedings consistent with this opinion.

                                                     */s/ Robert Hayes Scott*
                                                     ROBERT HAYES SCOTT
                                                     UNITED STATES MAGISTRATE JUDGE